JAY HYMAS,                                          )
                                                   )
     Plaintiff,                              )
                                                   )
v.                                                 )
                                                   )  No. 3:23-CV-00336-DCLC-JEM
                                                   )
UNITED STATES DEPARTMENT OF                        )
STATE and UNITED STATES                            )
DEPARTMENT OF THE TREASURY                         )
                                                   )
     Defendants.                             )
                                                   )

## DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Defendants,[1] by and through undersigned counsel, hereby respond to Plaintiff's Request for Preliminary Injunction ("Motion," ECF 20). Plaintiff seeks the extraordinary relief of compelling the Department of State to issue Plaintiff a passport pending the outcome of this litigation, and before the administrative application process is even complete. Such relief is not warranted. Plaintiff has not alleged any concrete, irreparable harm arising from a temporary impairment of his ability to travel internationally that could not be rectified at the conclusion of this litigation. Nor is he likely to succeed on his claims. The Department of State has not yet issued a final decision on Plaintiff's passport application, and Plaintiff is still in the midst of the administrative process. There is no legal basis at this time to review the Department of State's

---

[1] The Complaint names both the United States Department of State and the United States Department of Treasury as Defendants. As Plaintiffs' claims do not, however, implicate any alleged conduct of the Department of Treasury, Defendants intend to seek dismissal of the Department of Treasury on that basis alone.

1

processing of his passport application or to find any due process violation in the administrative process. Regardless, however, the Department of State is within its authority to deny Plaintiff a passport based on his unpaid debt arising out of his evacuation flight from Ecuador. Finally, the equities weigh heavily in Defendants' favor. The public has a strong interest in the government's collection of debts for services rendered that would be undermined if the Court were to order the Department of State to issue Plaintiff a passport in spite of his outstanding debt. This compelling interest far outweighs Plaintiff's interest in being able to travel internationally while the administrative process and this litigation play out. In sum, Plaintiff has not established that he warrants a grant of the ultimate relief he seeks at this preliminary stage of the litigation. Nor can Plaintiff obtain relief on behalf of other individuals, because no class has been certified and no class certification motion has even been filed. Accordingly, the Court should deny Plaintiff's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Evacuation and Accrual of Debt

Plaintiff Jay Hymas ("Plaintiff") is a United States citizen currently residing in Clinton, Tennessee. ECF No. 1 ("Complaint"). Plaintiff's claims in this case arise from his emergency evacuation from South America during the initial outbreak of COVID-19 in March 2020. ECF No. 1 at 5. Plaintiff had been traveling in South America when COVID-19 caused the cancellation of his return flight to the United States. *Id*. Plaintiff contacted the Department of State's local embassy for potential evacuation. *Id*. On March 27, 2020, Plaintiff arrived at the airport and completed a Department of State form DS-5528 (Evacuee Manifest and Promissory Note). *Id*.; Ex. A-1, Form DS-5528, Evacuation Manifest and Promissory Note ("DS-5528"). The DS-5528 states in part as follows:

2

U.S. Citizens: I promise to repay the U.S. Government in U.S. dollars or the foreign currency equivalent, within 30 days of initial billing, and if not repaid within 60 days of initial billing at an interest rate established in accordance with Federal law, for all applicable expenses for my/our evacuation. This evacuation loan is in addition to any other U.S. Government loans received for other purposes. I will keep the Department of State's Accounts Receivable Branch informed of my address(es) until I repay my loan in full. If I am unable to pay this loan in full, the Department of State may, at its discretion and upon my request, forward to me an installment agreement containing an installment plan for repayment of my loan.

*Id*. at Line 89, Part 2(2). In signing the DS-5528, Plaintiff acknowledged that he understood that:

(a) [He] will be billed for the cost of [his] transportation no greater than the amount of a full-fare economy flight, or comparable alternate transportation, to the designated destination(s) that would have been charged immediately prior to the events giving rise to the evacuation;
(b) [His] obligation to repay [his] loan will not be considered paid in full until it clears through the account of the Treasurer of the United States;
(c) Until [he has] paid [his] loan in full, [he] and all listed U.S. citizen family members will only be eligible for a limited validity U.S. passport;
(d) If [his] loan is in default, [he] and all listed U.S. citizen family members will not be eligible for limited validity U.S. passports;
(e) [His] loan will be subject to interest, penalties, and other charges for late payment as directed by law and regulation;
(f) [He] will be liable to pay any costs for collection.

*Id*. at Part 2(3). By signing the DS-5528, Plaintiff accepted all terms and conditions of repayment for his government-provided evacuation. *Id*. at Lines 91 & 92.

On or about August 5, 2020, the Department of State sent Plaintiff a Customer Bill ("Bill") outlining the reimbursement charges of $1,443.96 that Plaintiff owed for his evacuation flight. Ex. A-2, Department of State Customer Bill; *see also* ECF No. 1 at 5 (alleging that, approximately six months following his return to the United States, Plaintiff received a bill from the Department of State "for something like $1600" for his flight back to the U.S.). The Bill acknowledged that the authority allowing "the Department to provide this [evacuation] assistance (22 U.S.C. § 2671(b)(2)(A)(ii)) requires that [it] do[es] so on a reimbursable basis to the maximum extent

3

practicable." *Id*. The Bill advised Plaintiff of the fact that interest and penalties may accrue if payment is delinquent:

> [i]n accordance with federal debt collection regulations, if full payment is not received within 30 days from the due date, interest at a rate of 2% and a $50.00 administrative charge for processing and handling will be assessed. If this account becomes 90 days past due, then penalties at a rate of 6% will be assessed on the unpaid balance. Once a debt has been delinquent for 90 days, the debt will be referred to the Department of Treasury for collection and they may collect the debt via administrative offset of federal payment (e.g. tax returns, social security), referral to a private collection agency, referral to credit bureaus, through administrative wage garnishment and/or through other actions permitted by law.

*Id*. The Bill also lays out that Plaintiff had the right to "request an internal administrative review with respect to the existence of [the] debt and/or the amount of [the] debt" pursuant to 22 C.F.R. § 34.9 and provides email and mail addresses to contact to request such review. *Id*. The Bill noted a payment due date of September 4, 2020. *Id*.

Following the Bill, the Department of State sent Plaintiff a Notice of Delinquency ("Notice") dated September 8, 2020. Ex. A-3, Department of State Notice of Delinquency. The Notice once again informed Plaintiff of the amount owed and informed him that the payment was past due. *Id.* It provided the same information listed in the Bill regarding payment and possible penalties for non-payment. *Id*. The Notice also once again explained the right to request an internal administrative review pursuant to 22 C.F.R. § 34.9. *Id*. Having not received payment from Plaintiff, the Department sent Plaintiff a Second Notice of Delinquency ("Second Notice") dated October 19, 2020. Ex. A-4, Department of State Second Notice of Delinquency. The Second Notice informed Plaintiff that his debt was now accruing interest and administrative penalties due to the non-payment. *Id*. In addition to that information, the Second Notice also contained all of the same information regarding payment and the continued penalties for non-payment, including

4

notice that the debt would be referred to the Department of Treasury for collection once a debt has been delinquent for 90 days. *Id*.

Although Plaintiff claims to have disputed the amount of the Bill by mail (at some unspecified time), ECF No. 1 at 5, he does not provide any documentation to support that allegation. *Id*. Plaintiff's Motion does not discuss or attach any evidence concerning this alleged correspondence. Plaintiff alleges he then forgot about the issue for almost three years, until he attempted to renew his passport in 2023. *Id.*

## II.     Passport Renewal Application

On July 28, 2023, Plaintiff's existing U.S. passport expired. Ex. B, Plaintiff's Passport Renewal Application, at p. 3. On August 9, 2023, Plaintiff attended an appointment to obtain a new passport following the alleged completion of all the filing requirements and costs. ECF No. 1 at 5. Plaintiff alleges that, during that appointment (and through subsequent phone calls), he learned "that there was a 'hold' and that a passport would not be issued" due to the outstanding debt. *Id.*; *see also* 22 C.F.R. § 51.60(c)(2) (providing that the Department of State may refuse to issue a passport in any case in which the applicant has not repaid a loan received from the United States under 22 U.S.C. § 2671(b)(2)(B) or 22 U.S.C. § 2671(b)(2)(A) for the repatriation or evacuation of the applicant from a foreign country to the United States). Plaintiff alleges that on August 11, 2023, he received a voicemail with a call-back number with no explanation. ECF No. 1 at 6. Plaintiff alleged he tried to call that number back with no success and that he sought to contact the agency concerning his passport application in August and September 2023. *Id*. at 6; ECF No. 1-4, 1-5 (Compl. Exs. D, E).

Plaintiff later received a letter from the U.S. Department of State dated August 11, 2023, noting the balance owed "on an existing repatriation loan advanced to [the Plaintiff] by the U.S.

5

government." ECF No. 20-1; Ex. C, Department of State Information Request Letter. This letter indicated that the passport application could not be completed due to the outstanding debt that was now transferred to the United States Treasury. *Id.*[2] The letter stated that, if "payment arrangements are not made within ninety (90) days from the date of this letter, your application will be denied and your citizenship evidence will be returned to you." *Id.* The letter cited 22 C.F.R. § 51.60(a)(1), which provides that the Department of State "may not issue a passport . . . in any case in which the Department determines or is informed by a competent authority that . . . [t]he applicant is in default on a loan received from the United States under 22 U.S.C. 2671(b)(2)(B) for the repatriation of the applicant." ECF No. 20-1.

### III.    Corrected Information Request Letter

The August 11, 2023, letter contained an error concerning the citation to the Code of Federal Regulations and "mistakenly referred to an unpaid repatriation loan." *See* ECF No. 20-2, Mot. Ex. B [May 10, 2024, Letter]; Ex. D, Department of State Corrected Information Request Letter. Accordingly, the Department of State, in a letter dated May 10, 2024, corrected the error, and provided Plaintiff an additional opportunity to respond. *Id.* That letter stated that the Department of State is "unable to finish processing your application because you owe a balance on an evacuation loan advanced to you in 2020 by the U.S. government to pay for your return to this country." *Id.* The letter cited 22 C.F.R. § 51.60(c)(2), which states: "The Department may refuse to issue a passport in any case in which . . . the applicant has not repaid a loan received from the United States under 22 U.S.C. 2671(b)(2)(B) or 22 U.S.C. 2671(b)(2)(A) for the repatriation

---

[2] In accordance with federal law, the Department of State had transferred the debt to the Department of the Treasury for collection. *See* 31 U.S.C. §§ 3711(g)(1); 3716(c)(6); 3720A(a) (mandating federal agencies transfer nontax debts to the Department of the Treasury unless otherwise exempted).

or evacuation of the applicant." *Id.* The corrected letter gives plaintiff 90 days to satisfy his outstanding balance (until August 8, 2024). *Id.* The letter states that if payment is not made within 90 days, Plaintiff's passport application will be denied, and his citizenship evidence will be returned to him. *Id.* At the time of this filing, Plaintiff's passport application remains pending before the Department of State. *Id.*

## IV.     This Lawsuit

Plaintiff filed this lawsuit on September 18, 2023. *Id.* at 5. The Complaint alleges four causes of action: (1) "extort[ion]" relating to the reimbursement charge for his evacuation flight; (2) violation of Constitutional rights to be free from unlawful restriction of liberty to travel by the denial of a passport and passport card; (3) violation of procedural due process by an alleged failure to provide a hearing before the deprivation of his liberty interest of his right to travel; and (4) violation of the Administrative Procedure Act (APA) by the allegedly arbitrary and capricious denial of his passport. *See Id.* at 4-5; ECF No. 7 at 2. The Complaint, among other things, also requested a Temporary Restraining Order ("TRO"), injunctive relief, and the "certification of a class action lawsuit." *Id.* at 6. On September 20, 2023, the Court denied Plaintiffs' request for a TRO. *See* ECF No. 7 at 3.

Because Plaintiff did not properly serve the Department of State or the Department of the Treasury, the Court tolled the deadline for the Government's answer or response until "sixty days from the date that Plaintiff files proof of proper service on the State Department and Treasury pursuant to Rule 4(l)." ECF No. 13 at 3–4. Plaintiff filed a document purporting to be proof of service on March 25, 2024. *See* ECF No. 16, ECF 16-1; *see also* ECF No. 18. As previously noted (ECF No. 18 at 1-2), Defendants dispute that the document qualifies as proper service on either agency under Federal Rule of Civil Procedure 4(i)(3). ECF No. 18.

On May 23, 2024, Defendants filed a Motion to Stay Proceedings. ECF No. 19. Plaintiff filed the instant Motion for Injunctive Relief on June 3, 2024. ECF No. 20. On June 10, 2024, Plaintiff filed his opposition to Defendants' Motion to Stay Proceedings. ECF No. 21.

**LAW AND ARGUMENT**

## I. STANDARD FOR PRELIMINARY INJUNCTION

An injunction is "an extraordinary remedy" that "may only be awarded upon a *clear* showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). "[I]t is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal quotation marks omitted). A preliminary injunction "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). To prevail, a movant must thus "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 498 (6th Cir. 2022); *see also Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000). Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Although the Sixth Circuit has "described [its] preliminary-injunction test as a balancing test," *D.T. v. Sumner County Sch.*, 942 F.3d 324, 328 (6th Cir. 2019) (Balbandian, J., concurring), the Supreme Court has made clear that Plaintiff must establish each of the four factors before a preliminary injunction may issue. *Winter*, 555 U.S. at 20. And "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a

8

meaningful decision on the merits." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327. Therefore, the two most important considerations are irreparable harm and strong likelihood of success on the merits. *See, e.g., Fish and Chicken Land, Inc. v. U.S.*, No. 11-14413, 2013 WL 1729357, at *2 (E.D. Mich. Apr. 22, 2013); *Cox v. Corr. Med. Servs., Inc.*, No. 06-10350, 2006 WL 3147733, at *4 (E.D. Mich. Oct. 25, 2006).

## II. PLAINTIFF CANNOT MEET HIS BURDEN TO SHOW A PRELIMINARY INJUNCTION IS WARRANTED.

### A. Plaintiff Has Not Shown He Will Suffer Irreparable Harm Absent an Injunction.

An injunction cannot issue without a showing of irreparable harm. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982); *D.T.*, 942 F.3d at 327. "The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors." *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 942 (W.D. Mich. 2009); *see also Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); *Vander Vreken v. Am. Dairy Queen Corp.*, 261 F. Supp. 2d 821, 824 (E.D. Mich. 2003) ("A finding that the movant will suffer irreparable harm is the single most important factor to be considered by the court. . . .  Accordingly, the absence of irreparable injury must end this court's inquiry.") (internal quotation marks omitted).

Here, as this Court has already recognized in denying Plaintiff's request for a TRO, Plaintiff has not shown any irreparable harm resulting from his current lack of a U.S. passport that could not be rectified at the conclusion of this litigation. *See* ECF No. 7 at 2 ("[Plaintiff fails to demonstrate how he would suffer any irreparable harm in the absence of such an injunction.").

9

Plaintiff asserts that he is suffering infringement on a constitutional right, which he claims constitutes *prima facie* irreparable harm. ECF No. 20 at 4. However, because Plaintiff does not demonstrate a likely-cognizable constitutional claim, *see infra* §§ B(iii)-(iv), "his argument that he is entitled to a presumption of irreparable harm is without merit." *Overstreet*, 305 F.3d at 578. The Supreme Court has recognized that international travel is not a fundamental constitutional right. *Haig v. Agee*, 453 U.S. 280, 307 (1981); *see also Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *5 (E.D. Tenn. Dec. 21, 2020) (articulating the same standard). Although Plaintiff now—for the first time—invokes the First Amendment's protection of religious freedom, he does not explain how or why his current lack of a passport violates his rights to the free exercise of religion. *See* Mot. at 4-5. He does not specify any particular religious practice that he is unable to engage in. *See id.* Plaintiff asserts only a vague desire to engage in non-specified international travel and pursue non-specified "work or business opportunities outside the United States" and non-specified "religious pilgrimages" for a non-specified religious faith. *See* Mot. at 4. These vague, speculative assertions do not demonstrate the "certain and immediate" harm that is necessary to support a request for a preliminary injunction. *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020). In sum, Plaintiff fails to assert (let alone substantiate) any imminent, non-speculative harm from the temporary impairment of his inability to travel internationally.[3]

Further, as this Court also recognized, Plaintiff seeks to do more than merely maintain the status quo through the requested preliminary injunction. *See Benisek v. Lamone*, 585 U.S. 155, 161 (2018) ("[T]he 'purpose of a preliminary injunction is merely to preserve the relative positions

---

[3] Additionally, the fact that Plaintiff actually traveled internationally (to South America) without a valid U.S. passport earlier this year undermines Plaintiff's claims of irreparable harm.

of the parties until a trial on the merits can be held.'") (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). "The status quo, or the existing state of affairs, is that [Plaintiff] currently does not have a passport." ECF No. 7 at 3. That conclusion is correct. At the time he submitted his now-pending passport application on July 29, 2023, Plaintiff did not have a valid U.S. passport. *See supra* at Factual and Procedural Background (II) (noting that Plaintiff's prior passport expired on July 28, 2023). At the time he filed this lawsuit, Plaintiff did not have a passport. Thus, under any interpretation of the "status quo ante bellum"—that is, the status quo that preceded the instant controversy concerning his passport application—the status quo was that Plaintiff does not have a valid U.S. passport. The Court correctly recognized that Plaintiff seeks a mandatory injunction, and Plaintiff "failed to carry his burden of showing why such an injunction is warranted." *Id*. The Court should reject Plaintiff's attempt to obtain, by means of a preliminary injunction, a substantial portion of the ultimate relief he seeks, which would go far beyond maintenance of the status quo.

For the foregoing reasons, Plaintiff cannot establish irreparable harm. The Court may rely solely on the failure to show irreparable harm to deny Plaintiff's request for a preliminary injunction without considering the other preliminary-injunction factors. *Friendship Materials, Inc.*, 679 F.2d at 103; *JDC Mgmt., LLC*, 644 F. Supp. 2d at 942; *Vander Vreken*, 261 F. Supp. 2d at 824.

### B. Plaintiff Is Not Likely To Succeed on the Merits of His Claims.

But even if Plaintiff could show irreparable harm, he is not likely to succeed on his claims. A likelihood of success on the merits is one of the most important factors in determining whether preliminary injunctive relief is warranted. *Fish and Chicken Land, Inc.*, 2013 WL 1729357, at \*2. Plaintiff cannot establish a likelihood of success on the merits of his constitutional and APA claims pertaining to his passport denial, because there is no final decision on his passport application (*i.e.*,

there has been no denial yet). There is thus no final agency action that is reviewable under the APA and no final deprivation of any claimed liberty interest. Moreover, the freedom to travel internationally is not a fundamental right but is subject to reasonable governmental regulation for legitimate governmental interests—such as the interest in ensuring the payment of debts for evacuation services rendered by the U.S. government.[4]

> i. *Plaintiff Is Not Likely To Succeed on the Merits of His Claims Challenging a "Passport Denial" Because There is no Final Passport Denial.*

The Administrative Procedure Act ("APA") provides a cause of action to challenge agency action as violative of the law or the Constitution. *See* 5 U.S.C. § 706(2). It provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Thus, "[i]n order to state a claim under the APA, [a plaintiff] 'must allege that [his] injury stems from a final agency action for which there is no other adequate remedy in court.'" *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014) (quoting *Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006)). Two conditions must be satisfied for agency action to be final. First, the agency action "must mark the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or

---

[4] Because Plaintiff's Motion seeks to compel the Department of State to approve Plaintiff's passport application and issue him a passport, this opposition focuses on whether Plaintiff is likely to succeed on his claims concerning the purported "denial" of a passport. Plaintiff's Complaint "does not dispute a certain amount of money may be justly required." ECF 1 at 5 n.4. As discussed below, the governing regulations permit the Department of State to deny a passport if the applicant has not repaid a loan for the evacuation of the applicant provided under 22 U.S.C. § 2671(b)(2)(A)(ii). *See* 22 C.F.R. § 51.60(c)(2). There is no dispute that Plaintiff has not repaid any amount for his evacuation. Thus, to the extent Plaintiff disputes the *amount of* the debt in his First Cause of Action, ECF No. 1 at 4 (claiming that Defendants are "seeking to extort over $2,500 for something that should have been around $150"), this is not relevant to whether Plaintiff is likely to succeed on his claims that the Department of State's failure to provide him a new passport violates the APA or the U.S. Constitution.

interlocutory nature." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1992)). And second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78. Additionally, "a claim may not be adjudicated on its merits unless it is ripe." *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019). Until there is a final adjudication of the passport application, Plaintiff's claims are "anchored in future events that may not occur as anticipated, or at all." *Id.* (quoting *Nat'l Rifle Ass'n of Am. V. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997)).

Here, Plaintiff's passport application is still pending and thus there is currently no final agency action that is reviewable under the APA.[5] Although Plaintiff asserts that his passport was denied, the evidence attached to the Motion demonstrates otherwise. The Department of State's letters dated August 11, 2023, and May 10, 2024, attached as exhibits A and B to Plaintiff's motion , explicitly state that the Department is "unable to finish processing" Plaintiff's application due to his unpaid balance on an evacuation loan. ECF No. 20-1, 20-2; *see also* Exs. C, D. The letters further state that, without action from the Plaintiff, "[his] application *will be denied* and his citizenship evidence returned to [him]." *Id*. (emphasis added). These letters do not "mark the consummation of the agency's decision-making process," *Jama*, 760 F.3d at 495, because they allow for further action from Plaintiff to remedy the identified grounds for denial and contemplate that the final decision will be at some time in the future after the time for Plaintiff to respond expires. At the time of the final decision, if Plaintiff's passport application is denied, Plaintiff will receive a denial notice and will have the opportunity to seek review through the administrative process, as he has expressed the desire to do. *See* 22 C.F.R. §§ 51.65(a) (providing for denial

---

[5] Indeed, because Plaintiff's claims challenging the "denial" of his passport are unripe and subject to dismissal for lack of final agency action, Defendants sought to stay the instant case to allow the administrative process to proceed to completion. *See* ECF No. 19.

notice), 51.70 (setting forth procedures for requesting hearing on denial of passport, including a denial under 22 C.F.R. § 51.60(c)); *see also* ECF No. 20-3 at 9 (stating that Plaintiff intends to seek administrative review of the denial: "[Plaintiff is] hoping that now that [he has] received a 'corrected' denial letter that [he] can once again request a review"). Any review initiated by the Plaintiff would constitute a furtherance of the agency process and would add to the unfinished administrative record. In short, Plaintiff's passport application is currently pending, and thus there is no final agency action. *See, e.g.*, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (explaining that the "bite in the phrase 'final action' . . . is not in the word 'action,' . . . [but] rather in the word 'final'"). Consequently, Plaintiff is not likely to succeed on the merits of his claims challenging the Department of State's actions on his passport application because they are subject to dismissal for lack of final agency action.

> ii. *In any Event, Plaintiff Cannot Show He Is Likely To Succeed on the Merits Because the State Department Would Be Authorized to Deny a Passport Application When an Outstanding Debt is Owed to the Government for an Evacuation Flight.*

But even if there were a final denial of Plaintiff's passport application that could be challenged in this Court—which there is not— Plaintiff's APA claim would not succeed because valid authority exists for the Department of State to deny a U.S. citizen's passport application based on outstanding financial obligations to the government.

By statute, the Secretary of State is solely responsible for the granting and issuance of U.S. passports. 22 U.S.C. § 211a *et seq.*; Exec. Order No. 11295, 31 Fed. Reg. 10603 (Aug. 5, 1966).

14

The Department of State is also authorized to deny, restrict, and revoke U.S. passports. *See generally, e.g.*, *id.*; 22 C.F.R. §§ 51.60-65.[6] As relevant here, 22 C.F.R. § 51.60(c)(2) provides:

> The Department *may refuse to issue* a passport in any case in which . . . [t]he applicant has not repaid a loan received from the United States under 22 U.S.C. § 2671(b)(2)(B) or *22 U.S.C. § 2671(b)(2)(A)* for the repatriation *or evacuation* of the applicant . . . from a foreign country to the United States.

22 C.F.R. § 51.60(c)(2) (emphasis added). The applicable statutory section referenced in the regulations cites to the authority given to the Secretary of State in relation to emergency expenditures. *See* 22 U.S.C. § 2671. The statute states:

> Emergency Expenditures: (b) Activities Subject to Expenditures, (2) Activities described in paragraph (1) include—, (A) the evacuation when their lives are endangered by war, civil unrest, or natural disaster of—, (ii) private United States citizens . . . on a reimbursable basis to the maximum extent practicable, with such reimbursements to be credited to the applicable Department of State appropriation and to remain available until expended, except that no reimbursement under this clause shall be paid that is greater than the amount the person evacuated would have been charged for a reasonable commercial air fare immediately prior to the events giving rise to the evacuation.

22 U.S.C. § 2671(b)(2)(A)(ii).

Although, as Plaintiff notes, the word "loan" does not appear in § 2671(b)(2)(A)(ii), the statute expressly provides that the expenses for the evacuation of private United States citizens are "reimbursable." *Id*. The State Department's regulation permitting denial of a passport refers to these reimbursable expenses as an "evacuation loan." 22 C.F.R. § 51.60(c)(2) (citing 22 U.S.C. § 2671(b)(2)(A)(ii)). That regulation unquestionably permits the State Department to refuse to issue a passport due to an outstanding debt for an evacuation flight of the type Plaintiff took. Plaintiff does not dispute that he received evacuation assistance from the U.S. government to return

---

[6] Plaintiff makes a stray reference to the revocation of passports (ECF No. 20 at 4), but he has not alleged such an action against him, and any such action is not before this Court. Thus, we note only that there are various authorities addressing the denial, restriction, and revocation of passports.

from South America to the United States in March 2020. ECF No. 1 at 5. Nor does Plaintiff dispute that, before he boarded the evacuation flight from Ecuador, he signed a promissory note, the DS-5528, obliging him to reimburse the Department of State for an "evacuation loan." *See* Ex. A-1; *see also* ECF No. 1 at 2–3 & n.3 (alleging that the DS-5528 is a "contract" with the Department of State). Thus, although Plaintiff argues that he "never had at any time an 'evacuation loan,'" ECF No. 20 at 2, he was provided evacuation assistance and signed a promissory note, the DS-5528, which is the agreement to reimburse the government for an evacuation. *See* Foreign Affairs Manual, 7 FAM 1800; *see also* A-1, Line 89, Part 2(2) ("I promise to repay the U.S. Government in U.S. dollars or the foreign currency equivalent, within 30 days of initial billing, and if not repaid within 60 days of initial billing at an interest rate established in accordance with Federal law, for all applicable expenses for my/our evacuation. This evacuation loan is in addition to any other U.S. Government loans received for other purposes."). The evidence thus demonstrates that Plaintiff unquestionably received evacuation assistance by the U.S. government and also entered into an agreement to reimburse the U.S. government for the cost of his evacuation in accordance with the limits authorized by 22 U.S.C. § 2671(b)(2)(A)(ii). *See* Ex. A-1 at Part 2(3).

Because (a) Plaintiff received evacuation assistance from the U.S. government for his return to the United States from Ecuador in March 2020; (b) Plaintiff signed an agreement to pay back an "evacuation loan" that is authorized by 22 U.S.C. § 2671(b)(2)(A)(ii); (c) Plaintiff acknowledges that he has not paid any amount on that loan; and (d) Department of State regulations permit the Department to deny passports in cases where the applicant has not repaid a loan received for an evacuation (*see* 22 C.F.R. § 51.60(c)(2)), the Department would certainly have the authority to deny Plaintiff's pending passport application on the grounds set forth in the May 10, 2024 Information Request Letter. "Hence, the terms of both the Code of Federal Regulations and the

16

Loan agreement signed by [the Plaintiff] establish that the [hold] of [Plaintiff's] passport application [are] warranted in the circumstances." *Cors v. United States,* No. 12-CIV-2265, 2013 WL 6816696 (S.D.N.Y. Dec. 26, 2013).[7] As such, Plaintiff would fail to succeed on the merits on a claim challenging the denial of a passport on this basis.

iii.   *Plaintiff is Unlikely To Succeed on His Procedural Due Process Claim*

Plaintiff also asserts that by "denying" his passport application, Defendants violated his constitutional rights under the Fifth and Fourteenth Amendments[8] by restricting his freedom of movement without first affording him due process (*i.e.*, a pre-denial hearing). ECF No. 1 at 4 (third cause of action); ECF No. 20 at 4.  This claim is a challenge to the agency's process of reaching a decision, which is reviewable under the APA, and thus fails for lack of final agency action. *See supra* § II(B)(ii). But to the extent this claim can be evaluated outside the APA's cause of action, it is unlikely to succeed for similar reasons. Because the agency's passport-application process is still ongoing, Plaintiff's claim that he has not been afforded adequate procedural protections is premature. The claim is also without merit for the additional reasons discussed below.

The Due Process Clause of the Fifth Amendment states that the Government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. V. To establish a procedural due process violation, a plaintiff must show (1) that he has been

---

[7] Plaintiff's argument that the regulations do not permit the Department of State to deny him a passport card on this basis is likewise incorrect. *See* ECF No. 20 at 1; ECF No. 1 at 5. The term "passport" as used in 22 C.F.R. § 51.60(c) is defined as "a travel document regardless of format issued under the authority of the Secretary of State attesting to the identity and nationality of the bearer." 22 C.F.R. § 51.1. This term thus encompasses both passport books and passport cards.
[8] The Fourteenth Amendment is inapplicable to Plaintiff's claims, however, as it does not apply to the federal government. The Fifth Amendment's Due Process Clause applies to the federal government, while the Fourteenth Amendment's Due Process Clause applies only to the states. *Clifton v. United States Department of Justice*, 615 F. Supp. 3d 1185, 1202 (E.D. Cal. 2022).

deprived of a cognizable liberty interest, and (2) that such deprivation occurred without adequate procedural protections. *Schulkers v. Kammer,* 955 F.3d 520, 545 (6th Cir. 2020).

Plaintiff's essential claim is that he was entitled to, and was not provided with, a hearing before he was deprived of his liberty interest in the form of his freedom to travel internationally. ECF No. 1 at 4; ECF No. 20 at 3 (arguing that "Defendants took away Plaintiff's freedom of movement . . . before any effort whatsoever to provide Plaintiff with any "process" at all nor any review after the fact). But Plaintiff cannot establish that there has been an actual deprivation of his freedom of movement linked to the actions of the Department of State on his passport application. First, his passport expired on July 28, 2023, which is what rendered Plaintiff unable to travel internationally. Second, his passport renewal application—which he submitted after his prior passport had already expired—has not yet been denied, but remains pending to allow Plaintiff the opportunity to address the issue identified by the Department, namely, to satisfy his outstanding debt. *See Doe v. The Ohio State University*, 136 F. Supp. 3d 854, 864 (S.D. Ohio, 2016) ("To the extent Doe alleges other procedural-due-process arguments, they are unripe because he has yet to be deprived of any liberty or property."). Accordingly, Plaintiff is still in the midst of the administrative process and still has procedural remedies available to him as part of that ongoing process. *See Minix v. Frazier*, 4 Fed. App'x 230, 231, 2001 WL 128346, at *1 (6th Cir. 2001) ("the alleged availability of additional remedies indicates that his procedural due process claims are still premature").

Moreover, Plaintiff fails to identify any legal authority to support his claim that he is entitled to receive a pre-deprivation hearing before the Department of State can deny his passport application. Plaintiff is already afforded robust procedural protections throughout the passport-application process, and he has not argued that such protections are inadequate. Plaintiff first

18

received the August 11, 2023, letter from the U.S. Department of State informing him that his passport application would be denied if he did not make arrangements to pay the balance owed "on an existing repatriation loan advanced to [Plaintiff] by the U.S. government." ECF No. 20-1; Ex. C. The Department of State, realizing an error in this letter and the cited regulations, then sent Plaintiff a corrected letter identifying the correct impediment (an unpaid evacuation loan) and correct regulatory citation, and affording him an additional 90 days (until August 8, 2024) to satisfy his debt to avoid the denial of his passport. ECF No. 20-2; Ex. D. If Plaintiff fails to take action on his debt and his passport application is denied, Plaintiff will be entitled to an in-person administrative hearing upon request, in accordance with 22 C.F.R. §§ 51.70–51.74. If Plaintiff requests an administrative hearing to contest the denial, by regulation "the Department [of State] will make reasonable efforts to hold the hearing within 90 days of the date the Department receives the request." 22 C.F.R. § 51.70(a). Plaintiff has not—and cannot—show that this process is insufficient. Indeed, in a case where the Department of State had revoked a citizen's valid U.S. passport, the Supreme Court rejected a similar claim where the citizen argued that he was entitled to receive a pre-revocation hearing. *See Haig v. Agee*, 453 U.S. 280, 310 (1981) ("The Constitution's due process guarantees call for no more than what has been accorded here: a statement of reasons and an opportunity for a prompt post-revocation hearing.").[9]

Though outside the scope of his procedural due process claim concerning his passport application, Plaintiff was also provided ample notice and opportunity to challenge the underlying debt, but he failed to do so. The promissory note Plaintiff signed in March 2020 informed him that

---

[9] The Supreme Court did not decide that a statement of reasons and opportunity for a prompt post-revocation hearing were constitutionally required, only that they plainly satisfied any requirement of due process. *See Haig*, 453 U.S. at 310 n.62 ("We do not decide that these procedures are constitutionally required.").

he would be obligated to repay the evacuation loan and that non-payment would result in ineligibility for a U.S. passport. Ex. A-1. He was also informed as early as August 2020 of his outstanding financial obligations and his ability to seek administrative review of the existence or the amount of the debt. ECF No. 1 at 5; Ex. A-2. Plaintiff was most recently informed on May 16, 2024, of the various procedural mechanisms available to him. ECF No. 20-3. As such, Plaintiff fails to demonstrate that a deprivation has already occurred, or that he has not and will not be afforded adequate procedural protections in the event of a passport denial as part of the ongoing administrative process.

>    *iv. Plaintiff Is Unlikely to Succeed on his Claim of an Alleged Unconstitutional Restriction of Liberty to Travel.*

Plaintiff's second cause of action is an alleged "violation of Constitutional rights from the unlawful restricting of the liberty to travel" by the alleged denial of "both a passport and a passport card." ECF No. 1 at 4; ECF No. 20 at 4 (asserting harm from alleged restriction on "freedom of movement"). As a threshold matter, there has not yet been a final administrative denial of his passport application, and thus this claim fails. *See supra* § II(B)(i). But, to the extent that Plaintiff's claim can be reviewed and construed as a claim that the hold on his passport renewal adjudication unlawfully restricts his freedom of international movement, this claim also cannot succeed because that hold is rationally related to a legitimate governmental interest in ensuring repayment of evacuation debts.

Insofar as Plaintiff alleges a violation of a constitutionally protected liberty interest based on his current, temporary inability to travel internationally due to lack of a valid passport, the Supreme Court has explained that international travel is not a fundamental right: "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United

States." *Haig v. Agee*, 453 U.S. 280, 307 (1981).[10] The right of international travel is "no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." *Id.* And while the right of interstate travel is "virtually unqualified," the "right" to travel internationally is "subject to reasonable governmental regulation." *Id.* at 306-07; *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017). Indeed, the Supreme Court explicitly recognized that because "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States, . . . the 'right' of international travel . . . can be regulated within the bounds of due process." *Haig*, 453 U.S. at 306-07. And the United States has, in fact, regulated the issuance of passports. The regulations authorize, and sometimes mandate, the State Department to not issue passports where significant public interests are at stake, for example, the non-payment of child support, outstanding felony arrest warrants, subpoenas, seriously delinquent tax debt, and other matters. *See, e.g.*, 22 C.F.R. § 51.60.

At most, a claim of a deprivation of the freedom to travel internationally is subject to rational basis review, which requires a showing that a government's restriction of that interest only be "rationally related to a legitimate government interest." *See Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010); *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007). Thus, courts do not apply strict scrutiny to restrictions on international travel, but instead apply rational basis review. *See, e.g.*, *Dearth v. Holder*, 893 F. Supp. 2d 59, 73 (D.D.C. 2012) (citing *Hutchins v. Dist. Of Columbia*, 188 F.3d 531, 537 (D.C. Cir. 1999)); *Eunique*, 302 F.3d at 973-74 (citing

---

[10] As noted above, *supra* § II(A), Plaintiff briefly argues (but did not plead) that his right to freely exercise his religion has been infringed upon. ECF No. 20 at 4. Plaintiff merely mentions examples of international travel that some individuals conduct for religious purposes, but he does not specify his own religious beliefs and how his inability to travel internationally has any coercive effect on the practice of his religion. *See School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) ("[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion.").

21

*Califano v. Aznavorian*, 439 U.S. 170, 177 (1978)); *Weinstein v. Albright*, 261 F.3d 127 (2d Cir. 2001). Here, the State Department's potential denial of the passport application under 22 C.F.R. § 51.60(c)(2) would withstand this level of review. Courts are in agreement about the State Department's authority to deny and revoke passports for legitimate governmental interests, including when the applicant or passport holder has outstanding arrest warrants or legal obligations. *See, e.g.*, *Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002) (holding that statute and regulation permitting denial of passport due to outstanding child support obligations did not violate due process).

Courts have consistently subjected statutes and regulations that impose restrictions on international travel to a rational basis review, and any restriction on Plaintiff's ability to obtain a passport under 22 C.F.R. § 51.60(c)(2) easily withstands this level of review. *See, e.g.*, *Franklin v. United States*, No. 3:20-CV-1303- N, 2021 WL 4458377, at *10 (N.D. Tex. Sept. 29, 2021), *aff'd*, 49 F.4th 429 (5th Cir. 2022) (rejecting constitutional challenge to FAST Act's passport rules); *Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1122 (10th Cir. 2021); *Clancy v. Off. of Foreign Assets Control*, 559 F.3d 595, 604 (7th Cir. 2009); *Weinstein v. Albright*, 261 F.3d 127, 133 (2d Cir. 2001) (adopting reasoning of district court applying rational basis, *see Weinstein v. Albright*, No. 00-cv-1193, 2000 WL 1154310, at *5–6 (S.D.N.Y. Aug. 14, 2000)). In this case, the Department of State has a legitimate government interest in debt collection. *See Robinson v. Purkey*, 326 F.R.D. 105, 155 (M.D. Tenn. 2018) (finding the legitimate government interest of debt collection to be undisputed.). As such, Plaintiff cannot possibly establish that Defendants have unlawfully restricted his liberty interest in international travel by not having yet issued him a passport, because they have a rational basis for doing so. Plaintiff's due process arguments fail.

**C. An Injunction is Not in the Public Interest and the Balance of the Equities Favors Defendants.**

While the foregoing grounds are entirely dispositive of Plaintiff's Motion, Plaintiff also cannot satisfy the remaining prerequisites for a preliminary injunction, let alone that they weigh in his favor. The remaining two factors—the balance of equities and the public interest—merge when the government is the party opposing a motion for preliminary injunction. *Nken*, 556 U.S. at 435. Further, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). Here, the U.S. government and the public have a compelling interest in the enforcement of regulations that promote payment of debts to the government, as well as in ensuring that U.S. citizens who take advantage of U.S. emergency services abroad reimburse the government for those services. *See Guillermety v. Sec'y of Educ. of U.S.*, 241 F. Supp. 2d 727, 759 (E.D. Mich. 2002) ("Certainly, there is a strong public interest in government's collection of delinquent debt."); *see also Robinson v. Purkey*, 326 F.R.D. 105, 155 (M.D. Tenn. 2018) (recognizing legitimate governmental interest in debt collection); Passports, 72 Fed. Reg. 10095, 10096 (Mar. 7, 2007) (explaining that the relevant regulation allowing denial of passports "is intended to improve the Department's ability to collect unpaid debts to the U.S. Government"). An injunction requiring the issuance of a passport to Plaintiff would severely undermine this interest. And this compelling public interest greatly outweighs any temporary impairment of Plaintiff's ability to obtain a new passport to facilitate vaguely-described international travel opportunities.

**D. Plaintiff Cannot Obtain Relief on Behalf of Others Not Before the Court.**

Finally, regardless of the merits of his request for the extraordinary remedy of preliminary injunctive relief, Plaintiff cannot obtain injunctive relief on behalf of other persons who have been or will be denied passports based on outstanding evacuation loans. *See* Mot. at 6 (Relief Sought,

23

¶¶ 3-4). The usual rule is "that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). The exception to this rule is when there is a properly certified class that meets the requirements of Federal Rule of Civil Procedure 23. *See id.* Here, there is no such certified class, and Plaintiff has not moved for class certification or otherwise made any showing that any of the requirements of Rule 23 are met, including that he is qualified to represent the interests of a class. "[A] *pro se* litigant is not an adequate class representative." *Sillah v. Davis*, 252 F. Supp. 2d 589, 597 (W.D. Tenn. 2003)).[11] Accordingly, Plaintiff cannot obtain relief on behalf of others who are not before this Court.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Injunctive Relief.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

SAMUEL GO
Assistant Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

Dated: June 17, 2024

By: */s/ Michael D. Ross*
MICHAEL D. ROSS
Trial Attorney

---

[11] Plaintiff has since filed a Motion to Appoint interim class counsel under Federal Rule of Civil Procedure 23(g)(3). *See* ECF No. 22. Defendants' response to this Motion is currently due on June 26, 2024.

24

Bar No. 73986 (South Carolina)
United States Department of Justice
Office of Immigration Litigation - DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

25

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 17, 2024, the foregoing document was filed with the Court using the CM/ECF system and that a true and correct copy was sent to the following via U.S. mail, postage prepaid:

Jay Hymas
419 Highland Drive
Clinton, TN 37716

*/s/ Michael D. Ross*
Michael D. Ross
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation

26